IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| EDGAR CARRILLO,<br><br>　　　　　　　　Petitioner,<br><br>vs.<br><br>ERIC ARNOLD, Warden, California State Prison, Solano,[1]<br><br>　　　　　　　　Respondent. | No. 2:16-cv-00064-JKS<br><br>MEMORANDUM DECISION |

Edgar Carrillo, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Carrillo is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at California State Prison, Solano. Respondent has answered, and Carrillo has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On January 17, 2013, Carrillo was charged with murder (Count 1) and assault with a deadly weapon (Count 2). The information alleged as to Count 1 that Carrillo personally used and intentionally discharged a firearm in the commission of the offense and thereby caused the death of the victim, and that Carrillo personally inflicted great bodily injury with respect to Count 2. Carrillo pled not guilty, denied the enhancements, and proceeded to a jury trial. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the evidence presented at trial:

---

[1]　　　　Eric Arnold, Warden, California State Prison, Solano, is substituted for Suzanne M. Peery, former Warden, High Desert State Prison. FED. R. CIV. P. 25(c).

**Prosecution Case**

Lorena Torres (Lorena) testified that the victim in count one was her brother, known as "Paco."[FN2]  In December 2008, Ahida Garcia (Ahida), whom Paco had been seeing for a few months, was renting a room in the house of Lorena and her family.

> FN2.   A number of persons in the case share last names and/or were referred to at trial principally by their first names.  For clarity and convenience, we call those persons by the names used at trial.  We intend no disrespect.

On Christmas Eve 2008, a cold night with heavy rain and wind, Lorena and Paco went to the house where [Carrillo] lived with his wife, Airali Diaz (Airali), their children, and Ildefanso Diaz (Ilde), the brother of Airali and Ahida.  Ahida had gone there that evening and Lorena and Paco wanted to exchange presents with her.[FN3]  Lorena drove Paco's sport utility vehicle (SUV) because he had been drinking.

> FN3.   The parties stipulated that if Ahida had been called to testify, she would have stated that Ilde was upset that she was seeing Paco because she was going through a divorce that was not yet final.

When Lorena and Paco got to the house, she got out and knocked on the door.  Ilde answered the door and invited Lorena in.  She declined his offer of a beer, saying "I just came for Ahida."  Lorena and Ahida went out to the SUV, where Paco was standing.

While Lorena, Paco, and Ahida were talking outside, Ilde came out and told Ahida to go back in; she did not.[FN4]  Ahida said she would come to Lorena's house soon by herself.  She walked around the passenger side of the SUV as Lorena and Paco walked around the driver's side.

> FN4.   According to the parties' stipulation, Ahida would also have testified that Ilde came outside and told her to go back inside.

[Carrillo] came out of the house and pushed Paco in the chest.  [Carrillo] said: "Why are you coming to my house?  Nobody should come to my house."  Paco said he did not come there to cause problems.  As [Carrillo] continued to hit or push Paco, Lorena grabbed [Carrillo] by the shoulder and told him they were leaving.

[Carrillo] moved in front of Lorena and Paco, took out a gun, and fired a shot into the ground between Lorena's feet and Paco's feet.  They were "paralyzed" because they had not known [Carrillo] had a gun.

Lorena then moved quickly toward the driver's side of the SUV, going from the back to the front, and yelling for help.  She heard more shots.  When she reached the front of the SUV, Ahida, Ilde, and Airali were there.

Going to the back of the SUV again, Lorena saw Paco on the ground; [Carrillo] was pointing the gun at his face.  As she grabbed Paco and told him to get up, [Carrillo] seized her shoulder and hit her on the right side of the head with his gun, then started kicking her in the small of the back; she fell.  Her forehead was "full of blood" and later

2

required five stitches at the hospital.  When she turned around, she saw [Carrillo] and Ilde kicking Paco.

Lorena begged Ahida and Airali to help her.  Seeing [Carrillo] coming toward her, she got behind one of the women.

[Carrillo] and Ilde ran into the house, came out with keys, got into Ahida's green Nissan Xterra, and drove off.  The Xterra was later found abandoned a mile and a half from the crime scene.  [Carrillo] was found in Mexico in May 2011.

Sacramento Police Officer John Harshbarger, who was dispatched to the scene to check out a report of gunshots and "a subject down," arrived there shortly after midnight. He saw a man lying on the ground with blood on his chest; the man was unresponsive. Emergency medical technicians determined that the man was dead.

Sacramento Police Detective Jason Kirtlan arrived shortly afterward and saw that the victim had "two apparent gunshot wounds to his upper torso."  Kirtlan found an expended bullet on the ground near the victim.  A criminalist later determined that it was a .38 or .357 magnum caliber bullet.  A detective executing a search warrant on [Carrillo's] home a couple of hours later found six live .38–caliber bullets in a dresser drawer in a downstairs bedroom.

Dr. Stephany Fiore, who performed the autopsy on Paco, concluded that he was shot twice in the chest; either wound would have been fatal.  The shots were fired from "intermediate range," probably two or more feet away.  Paco's face had several bruises and lacerations.  According to the toxicology lab, Paco's blood-alcohol content at the time of death was 0.18 percent.

A bullet which remained in the body was sent to the crime lab for analysis.  The criminalist determined that, like the bullet found on the ground near the victim's body, it was a .38 or .357 magnum caliber bullet.

**Defense Case**

[Carrillo] testified on his own behalf.

According to [Carrillo], in December 2008 he and his wife occupied an upstairs bedroom in their house.  The downstairs bedroom where the police found bullets had been occupied by a cousin for six months.  [Carrillo] did not know about the bullets and had never had a gun before Christmas Eve 2008.

As of December 2008, [Carrillo] worked at Sherwin–Williams, but also conducted a business on the side selling and installing carpeting.  Sometimes friends or employees would come over and borrow his truck.  On Christmas Eve, his friend and employee "Luis" came over, asking to borrow the truck and saying he would return it the next day; he had a gun with him and asked [Carrillo] to take it and hold it for him.  He left five or ten minutes before Lorena and Paco arrived.[FN5]

> FN5.   [Carrillo] had known Luis for four or five years and used him to help on
>        jobs two or three days a week, but he was homeless and [Carrillo] did not
>        know his last name or how to locate him now.  Luis had never asked
>        [Carrillo] to hold a gun for him before, and [Carrillo] did not know why he
>        did so on this occasion.  [Carrillo] "didn't think about it."  He did not

know if the gun was loaded when Luis gave it to him in the bathroom of [Carrillo's] house, but [Carrillo] put the gun in his pocket and went back to the living room where his children were.  [Carrillo] did not put the gun away because Luis said he was coming back after buying beers at the liquor store.  [Carrillo] was not concerned about whether the gun could go off by accident.

While [Carrillo] was on the telephone with relatives, another call came in.  The person on the other end said "Who the fuck are you?"  [Carrillo] demanded that the other person "[s]how some respect" and identify himself; in response, the other person said "What do you care?"  [Carrillo] hung up.

Immediately afterward, a truck came into the driveway; Paco was driving.[FN6]  Ilde and a male friend of his, whom [Carrillo] did not know and who never came into the house, were outside at the time.  They had been outside drinking for "an hour or two."

> FN6.    [Carrillo] did not know Paco and did not remember ever meeting Lorena.  [Carrillo] had stopped briefly at Lorena's house once to measure for carpets.
> According to [Carrillo], when Lorena testified that she was driving the SUV she was "covering for her brother."

When [Carrillo] went outside to see who had arrived, he saw Paco arguing with Ilde in a threatening manner.   [Carrillo] did not recall Lorena coming to the door and asking for Ahida.  (According to [Carrillo], Lorena could not have knocked on the door and Ilde could not have opened it, because [Carrillo] did not hear her knock on the door and Ilde was outside.)[FN7]  [Carrillo] noticed that Ahida had gone outside, but did not know why.  After she went out, [Carrillo] heard her and Lorena also yelling.  Ilde's unnamed friend was not yelling.

> FN7.    [Carrillo] said Lorena was wrong when she testified that Ilde came out after Ahida and yelled at her to get back inside.  Asked about the stipulation that Ahida would have testified to the same effect, [Carrillo] said Ahida was also wrong.

[Carrillo] asked Paco who he was. Paco, who was "very drunk and violent," said "What do you care?"[FN8]  Ahida and Lorena were trying to calm him down.

> FN8.    [Carrillo] asked Ilde who Paco was.  Ilde just said Paco was "a son-of-a-bitch."

According to [Carrillo], Paco "started coming at me.  He kicked me a few times, so then I pulled out the gun and I shot at the ground, and then he came at me, and things happened very quickly."  Just before [Carrillo] fired the shot, Paco said he "was going to,

uh, beat the shit out of [him]."  [Carrillo] shot into the ground because he got scared and "to save [his] own life."

As Paco came at [Carrillo], the gun fired twice.  After Paco fell, Ilde took the gun from [Carrillo] and started kicking Paco on the ground.  When Lorena came over, Ilde hit her on the forehead with the gun.

Ilde grabbed the keys to Ahida's truck and said, "Let's go, let's go."  They drove to a gas station and parked there, then called a friend and asked him to give them a ride to Mexico.

Defense counsel asked: "Moments just before you shot [Paco], what were you thinking?"  [Carrillo] answered: "Well, that he was going to hurt me because he—he threatened my life."  Asked whether [Carrillo] had any weapons, [Carrillo] said: "No.  He just—he made a move like he was putting his hands into his pants."

On cross-examination, [Carrillo] said Paco threatened "to kick our ass." ([Carrillo] conceded that he could have walked away from Paco.)  After making this threat, Paco walked away toward the back of his truck, "act[ing] like he was going to grab something," and "mention[ing] he was going to grab a weapon."[FN9]  [Carrillo] took the gun out of his pocket and fired into the ground only after Paco threatened him and went back toward the truck.  When [Carrillo] fired the shot and told Paco to leave, Paco was facing him.  He came forward; they struggled and the gun went off.  [Carrillo] did not know how it fired.  He and Paco were touching each other and struggling when it happened.[FN10]

> FN9.   The prosecutor asked: "You didn't tell us that until just this second when I asked you, did you?"  [Carrillo] said: "Well, you did not ask me that."  The prosecutor followed up: "When your attorney asked you about the threats, did you just forget to tell us at that time that Paco said he was going to get a weapon?"  [Carrillo] said: "Yes."

> FN10.  Asked about Dr. Fiore's opinion that the shots were fired from at least two feet away, [Carrillo] said: "When he—when he came at me, you can get separated a little, and that's when it fired.  It wasn't very far."  [Carrillo] repeated that the shots were fired while he and Paco were struggling, but finally said: "I don't remember what the distance between Paco and I was, whether it was two feet, three feet.  I don't know."

[Carrillo] did not hit Lorena with the gun or kick her.  Ilde did.  Lorena's testimony on that point was mistaken.  Lorena was also mistaken when she testified that [Carrillo] drove the Xterra from the scene; Ilde was the driver.

*People v. Carrillo*, No. C073835, 2014 WL 1007781, at *1-4 (Cal. Ct. App. Mar. 17, 2014).

At the conclusion of trial, the jury found Carrillo guilty of both counts and also found

true the firearm enhancements attached to Count 1.  It found not true the great bodily injury

enhancement attached to Court 2.  The court subsequently sentenced Carrillo to the statutory term of 15 years to life imprisonment on Count 1 plus a consecutive term of 25 years to life imprisonment for the firearms enhancement.  Carrillo was also sentenced to an imprisonment term of 4 years on Count 2, which was stayed pursuant to California Penal Code § 654.[2]

Through counsel, Carrillo appealed his conviction on the ground that the trial court committed reversible error when it failed to instruct the jury on the manslaughter theory of unreasonable self defense.  On March 17, 2014, the Court of Appeal issued a reasoned, published opinion affirming the judgment against Carrillo in its entirety.  *Carrillo*, 2014 WL 1007781, at *7.  Carrillo petitioned for review in the California Supreme Court, which was denied without comment on June 11, 2014.

Carrillo then filed in the California Superior Court a *pro se* petition for habeas relief.  In that petition, he argued that: 1) the trial court failed to "fully instruct" the jury on lesser-included offenses; 2) the evidence presented was insufficient to sustain his convictions; 3) the prosecutor knowingly presented perjured testimony from its star witness; 4) the prosecutor committed misconduct by asking Carrillo during cross-examination about the star witness's veracity; 5) his rights to due process and confrontation were violated by the admission of an out-of-court statement; 6) the trial court was without jurisdiction to impose restitution fines without submitting to the jury whether Carrillo had the ability to pay; 7) trial counsel rendered ineffective assistance of counsel; and 8) appellate counsel rendered ineffective assistance of

---

[2]     Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  CAL. PENAL CODE § 654.

counsel.  On March 9, 2015, the superior court issued a reasoned, unpublished opinion denying Carrillo's claims both on procedural grounds and on the merits.  Carrillo then raised his claims in a *pro se* habeas petition to the Court of Appeal, which was denied without comment on May 7, 2015.  Carrillo additionally filed a *pro se* habeas petition in the Supreme Court, which was likewise summarily denied on November 24, 2015.

Carrillo then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on December 29, 2015.  *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Carrillo raises the same arguments he unsuccessfully raised to the state courts on habeas review: 1) the trial court erred in failing to instruct the jury on unreasonable self-defense; 2) the evidence was legally insufficient to sustain his conviction for second-degree murder; 3) the prosecutor knowingly presented perjured testimony; 4) the prosecutor committed misconduct by asking Carrillo whether a prosecution witness had lied during her testimony; 5) his right to confrontation was violated by the admission of an out-of-court statement; 6) the trial judge improperly imposed restitution fines; 7) the prosecutor committed misconduct during summation; 8) trial counsel rendered ineffective assistance; and 9) appellate counsel rendered ineffective assistance.

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    Instructional Error (Ground 1)

Carrillo first argues that the trial court erred by failing to instruct on imperfect self-defense.  The Court of Appeal laid out the following facts underlying this claim:

**Instructions**
The trial court noted that the instructions in the record so far were "a matter of our consensus."  The court then stated that the facts as to count one warranted instruction on self-defense (apparently not part of the "consensus" instructions); defense counsel agreed.[FN11]  The court stated further that defendant's testimony that the gun "went off . . . in the course of a struggle" would also warrant instruction on accident, though it contradicted [Carrillo's] claim that he shot intentionally in self-defense.  Defense counsel, "[f]or tactical reasons," requested that the court not instruct on accident.  The court agreed not to do so.  Neither counsel proposed any other instruction.

FN11.  The prosecutor requested that, along with self-defense instructions, the jury should receive instructions on mutual combat and "that a self-defense claim cannot be contrived."  The court indicated it would give those instructions and did so.

The trial court instructed the jury as to count one on justified self-defense and on "heat of passion" voluntary manslaughter.  The court did not instruct on imperfect self-defense.

*Carrillo*, 2014 WL 1007781, at *4.

Carrillo argues, as he did on direct appeal, that his testimony that Paco threatened to "beat the shit out of him or kick his ass," then failed to back off after a warning shot, then "seemed to be reaching into his pants for something," required the trial court to *sua sponte* instruct on imperfect self-defense.  As the Court of Appeal explained, under California law:

"The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.  [Citations.]  That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser.  [Citations.]  To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial—that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist. [Citations.]"  (*People v. Blair* (2005) 36 Cal.4th 686, 744–745.)

The duty to instruct on lesser included offenses includes the duty "to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.  On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support."  (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).)

"In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury.  [Citations.] Moreover, . . . the sua sponte duty to instruct on lesser included offenses . . . arises even against the defendant's wishes, and regardless of the trial theories or tactics the defendant has actually pursued.  Hence substantial evidence to support instructions on a lesser included offense may exist even in the face of inconsistencies presented by the defense itself."  (*Breverman*, *supra*, 19 Cal.4th at pp. 162–163, fn. omitted.)

" 'An honest but unreasonable belief that it is necessary to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the mental element necessary for murder, so that the chargeable offense is reduced to manslaughter.' [Citation.]"  (*In re Christian S.* (1994) 7 Cal.4th 768, 773.)  "[S]ubstantial evidence of . . . unreasonable self-defense may exist, and the duty to instruct sua sponte may therefore arise, even when the defendant claims that the killing was accidental, or that the [state] of mind on which [unreasonable self-defense] depend[s] w[as] absent."  (*Breverman*, *supra*, 19 Cal.4th at p. 163, fn. 10.)  However, "trial courts [need not] instruct sua sponte on unreasonable self-defense in every murder case.  Rather, the need to do so arises only

when there is substantial evidence that the defendant killed in unreasonable self-defense, not when the evidence is 'minimal and insubstantial.' [Citation.]"  (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. omitted (*Barton*).)

*Carrillo*, 2014 WL 1007781, at *4-5.

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction. *Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases.  The Ninth Circuit, like several other federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of a state trial court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding.").  Accordingly, the decision of the California courts denying Carrillo relief as to this claim was not contrary to United States Supreme Court authority as set forth in *Beck*.

Because no Supreme Court precedent has imposed a *sua sponte* duty to instruct on lesser-included offenses in noncapital cases, Carrillo's claimed instructional error must have "so infected the entire trial that the resulting conviction violates due process" in order to be a cognizable basis for federal habeas relief.  *Waddington v. Sarausad*, 555 U.S. 179, 191 (2009) (internal quotation marks omitted).  Carrillo fails to satisfy this heavy burden.  The California courts have explained that, where the evidence does not raise an issue concerning

11

reasonableness, it is not error to refuse the instruction, even if the court instructs on self-defense. *People v. Valenzuela*, 133 Cal. Rptr. 3d 196, 211 (Cal. Ct. App. 2011) ("We agree that 'just because a trial court instructs a jury on perfect self-defense, this does not necessarily mean that it has a sua sponte duty to also instruct on *imperfect* self-defense.'" (quoting *People v. Rodriguez*, 62 Cal. Rptr. 2d 345, 346 (Cal. Ct. App. 1997))).

Here, the record supports the Court of Appeal's conclusion that the trial court did not err when it omitted the imperfect self-defense instruction because there was no evidence, let alone substantial evidence, supporting an imperfect self-defense theory.  As the Court of Appeal explained:

> [Carrillo] testified that after threatening [Carrillo's] life, Paco headed for his vehicle while saying "he was going to grab a weapon."[FN12]  If credited, this evidence, together with the evidence that Paco was drunk, belligerent, and undeterred by a warning shot, would have supported [Carrillo's] claim that he reasonably feared for his life.  We see no way in which a jury could have found on that evidence, considered as a whole, that [Carrillo's] alleged fear for his life was unreasonable.  Therefore, he was not entitled to an instruction on imperfect self-defense.

> FN12.  [Carrillo] refers to Paco's threats in general terms, but the only specific threat he cites is the threat to "beat the shit out of [Carrillo]" or "kick his ass."

*Carrillo*, 2014 WL 1007781, at *6.

In sum, if the jury believed Carrillo's testimony, then Carrillo shot Paco in actual self-defense.  If the jury believed the prosecution's version of events, then Carrillo shot Paco with malice intent.  Under either theory of the case, imperfect self-defense did not apply.  Absent substantial evidence supporting a claimed defense or lesser-included offense, the trial court's decision to refrain from instructing on imperfect self-defense was not erroneous, let alone a due process violation.  *See Solis*, 219 F.3d at 929-930 (finding no constitutional error in refusal to

12

give lesser-included voluntary manslaughter instruction where there was no "substantial evidence" supporting the instruction under state law).  Accordingly, the state court's rejection of Carrillo's instructional error claim was not contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  And because the instruction was not warranted, Carrillo's related ineffective assistance claim also must fail.  *See Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996) (defense counsel's failure to raise a meritless argument or to take a futile action does not constitute ineffective assistance of counsel).

B.      Insufficiency of the Evidence (Ground 2)

Carrillo next contends that "no evidence on the record support[s] petitioner's second degree murder conviction based on implied malice aforethought."  As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the California court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that

the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. *Jackson*, 443 U.S. at 324 n.16. This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review. *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005). A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

Here, Carrillo appears to argues that there was insufficient evidence to support his second-degree murder conviction by attacking the credibility of the prosecution's witnesses and again reiterating his version of events. But Carrillo misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995). In this case, viewing the evidence in the light most favorable to the verdict, the witness testimony was certainly sufficient to demonstrate that Carrillo evinced implied malice aforethought so as to satisfy the elements of

second-degree murder under California law.  *See United States v. Larios*, 640 F.2d 938, 940 (9th

Cir. 1981) ("The testimony of one witness . . . is sufficient to uphold a conviction." (citations

omitted)); *see also Bruce v. Terhune*, 376 F.3d 950, 957-58 (9th Cir. 2004) (per curiam) (same).

Although it might have been possible to draw a different inference from the evidence, this Court

is required to resolve that conflict in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.

Carrillo bears the burden of establishing by clear and convincing evidence that these factual

findings were erroneous.  28 U.S.C. § 2254(e)(1).  He has failed to carry such burden.  The

record does not compel the conclusion that no rational trier of fact could have found that Carrillo

was guilty of second-degree murder, especially considering the double deference owed under

*Jackson* and AEDPA.  Carrillo is therefore not entitled to relief on his legal insufficiency claim.

C.    Prosecutorial Misconduct (Grounds 3, 4, 7)

Carrillo next alleges that the prosecutor committed misconduct in a number of ways.  To

successfully raise a claim cognizable on habeas review based on a prosecutor's comments at

trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*,

477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional

claim.  *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  A prosecutor's comments in

summation constitute grounds for reversal only when the remarks caused actual prejudice.  *Shaw

v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of

prosecutorial misconduct in summation).  Moreover, a prosecutor must have "reasonable

latitude" to fashion closing arguments.  *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.

1991).

      1.    *Perjured testimony*

     Carrillo alleges that Lorena Torres, the prosecution's star witness, testified in a manner

inconsistent with her prior statements to law enforcement, thus showing that she perjured herself

at trial.  "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing

use of perjured testimony is fundamentally unfair, and must be set aside if there is any

reasonable likelihood that the false testimony could have affected the judgment of the jury."

*United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted).  The essential elements of

such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that

the testimony was false or perjured, and (3) the false testimony was material.  *Hayes v. Brown*,

399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959);

*Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).  Thus, if Carrillo successfully shows

that the prosecutor knowingly elicited perjured testimony material to his case, habeas relief may

be warranted.

     Although the prosecutor has a duty to refrain from knowingly presenting perjured

testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not

support Carrillo's unsupported contention that the prosecution knowingly introduced the

perjured testimony of Lorena.  Indeed, Carrillo has failed to show that Lorena perjured herself at

trial.  While Carrillo points to inconsistencies in Lorena's testimony and pre-trial statements,

mere inconsistencies in witness testimony are insufficient to establish that the prosecution

knowingly introduced false testimony, as it is "within the province of the jury to resolve the

16

disputed testimony."  *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002); *see also United States v. Zuno–Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).  As the superior court explained in rejecting Carrillo's claim on habeas review:

> [Carrillo] presented his own testimony that differed from Lorena's testimony, thereby giving the defense a change to "correct" the matter.  The jury chose to believe Lorena and not petitioner; that is the function of juries.

Because Carrillo cannot show that Lorena's testimony was false, he cannot show that the prosecutor committed misconduct with regard to that testimony.  Habeas relief is therefore not warranted on this claim.

> 2.  *Asking whether a witness lied*

Carrillo also alleges that the prosecutor committed misconduct by asking him on cross-examination whether Lorena had lied during her testimony.  In support of his claim, Carrillo quotes from the trial transcript, showing that the prosecutor repeatedly asked Carrillo if he heard Lorena testify to something in particular and whether she was "wrong" about it.

In the exercise of its supervisory powers over the district courts, the Ninth Circuit has stated that "it is generally improper for an attorney to compel a witness to testify that another witness lied."  *United States v. Ramirez*, 537 F.3d 1075, 1084 (9th Cir. 2008); *see also United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002) (citing *United States v. Sullivan*, 85 F.3d 743, 749-50 (1st Cir. 1996) ("[C]ounsel should not ask one witness to comment on the veracity of the testimony of another witness."); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) ("[i]t is therefore error for a prosecutor to induce a witness to testify that another witness, and in particular a government agent, has lied on the stand")).  "It is the jurors' responsibility to determine credibility by assessing the witnesses and witness testimony in light of their own

experience."  *United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998).  But that

precedent does not compel habeas relief here because it does not constitute clearly-established

federal law as articulated by the U.S. Supreme Court.[3]  *See Renico v. Lett*, 559 U.S. 766 (2010).

And, the Supreme Court has never held that a prosecutor commits misconduct when he asks a

defendant whether a witness is lying.  *Carey*, 549 U.S. 70, 77 (2006) (where Supreme Court

precedent gives no clear answer to question presented, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law'").  Consequently, the Court of

Appeal's conclusion that the prosecutor engaged in no misconduct was reasonable in light of the

existing Supreme Court precedent.

Moreover, the record reflects that the prosecutor did not engage in misconduct by asking

"were they lying" questions on cross-examination or by referring to the possibility that the

witness had lied on closing argument.  As the Superior Court noted on habeas review, Carrillo

"was only asked whether Lorena was 'wrong,' which is more akin to 'mistaken,' which is not

intentional, rather than 'lying,' which involves purposefulness. . . . Here, petitioner was

testifying to his version of events as he had personally perceived them, and was being asked if he

thought that Lorena had been 'wrong,' that is, mistaken, about what she had claimed to have

---

[3]        In *Zambrano v. Proper*, 481 F. App'x 300, 302-03 (9th Cir. 2012), the Ninth
Circuit granted a habeas petition after concluding that the state court had unreasonably applied
*Darden*.  In that case, the prosecutor repeatedly asked the defendant during cross-examination
whether the two undercover police officers who had witnessed the drug sale were lying, and if
the defendant thought the officers would risk their jobs by lying to the jury.  *Id.* at 302.  The state
court had determined that the questioning constituted misconduct under state law but nonetheless
concluded that it was not so egregious as to deny due process.  *Id.*  The Ninth Circuit held that
the prosecutor's conduct constituted misconduct that was not harmless.  *Id.* at 303.  But that case
is inapplicable here because, as discussed *infra*, the prosecutor's conduct in Carrillo's case does
not constitute misconduct.

perceived." Carrillo thus fails to establish that the prosecutor's questioning constituted

misconduct. And again, because Carrillo shows no prosecutorial misconduct, his related

ineffective assistance claim, which alleges that counsel was ineffective for failing to object to the

prosecutor's questioning, also must fail. *See Rupe*, 93 F.3d at 1444-45.

>        3.        *Comments on defense counsel*

Carrillo additionally alleges that the prosecutor presented false evidence to the jury when

she told them that defense counsel was "a very good attorney." The prosecutor argued the

following in summation without objection:

> So I told you in my opening statement that this case was going to be quick; and,
> true to my word, it was. It was very clear. It's certainly our position that because the
> defendant testified, it doesn't make it any less clear.
> Just because the case was short doesn't mean it was short on evidence or short of
> proof, doesn't mean it was less important than a case that lasts months. I think you all
> agreed to that during voir dire.
> The Constitution holds that he's entitled to his trial; make us bring in witnesses to
> testify. And he's had that trial. He had/has a very good attorney. Mr. Brace is a good
> attorney. But his client left him no room. And as good as Mr. Brace is, he cannot turn
> chicken you know what into chicken soup, and that's what the defendant was asking him
> to do in this case.

Although Carrillo frames his argument as another *Napue* claim involving false testimony,

as the jury was instructed, the prosecutor's comments were not evidence, nor does the record

show that the prosecutor had reason to believe that his comment was false. To the extent

Carrillo claims that the prosecutor's statement was improper, the statement was directed at the

strength of the defense on the merits and did not amount to an improper disparagement of

defense counsel. *See United States v. Ruiz,* 710 F.3d 1077, 1086 (9th Cir. 2013) (prosecution's

characterization of defense's case as "smoke and mirrors" was not improper where comment was

directed to strength of the case and was not an *ad hominem* attack on defense counsel) (citation

omitted); *People v. Stitely*, 108 P.3d 182, 212-13 (Cal. 2005) (prosecutor's use of "colorful language" to criticize "counsel's tactical approach" was not improper where the comments were "explicitly aimed at counsel's closing argument and statement, rather than at him personally"). Accordingly, the state court's rejection of this claim is reasonable and must be upheld on habeas review. *See Inthavong*, 420 F.3d at 1058-59. Carrillo thus fails to advance any meritorious prosecutorial misconduct claims.

D.    Confrontation Violation (Ground 5)

Carrillo also claims that his right to confrontation was violated when the trial court admitted Ahida's statements into evidence even though she did not testify at trial. The Confrontation Clause of the Sixth Amendment mandates that a criminal defendant has the right to confront and cross-examine the witnesses against him. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). This generally means that out-of-court testimonial statements by a witness are not admissible against a defendant unless the witness is available for cross-examination at trial or the defendant had an opportunity to cross-examine the witness about the statements before trial. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

However, the record here reflects that defense counsel admitted that Ahida was unavailable as a witness and that the parties entered into a stipulation that the jury be informed that, if called to testify, Ahida would have testified to certain particular facts. As there was a stipulation, Carrillo cannot show that the trial court erred.

"The test regarding the validity of a stipulation is voluntariness." *United States v. Zepeda*, 738 F.3d 201, 207 (9th Cir. 2013) (quoting *United States v. Molina*, 596 F.3d 1166, 1168–69 (9th Cir. 2010)). Stipulations "freely and voluntarily entered into in criminal trials are

as binding and enforceable as those entered into in civil actions." *Molina*, 596 F.3d at 1169

(citation omitted).  "A defendant who has stipulated to the admission of evidence cannot later

complain about its admissibility unless he can show that the stipulation was involuntary."

*Zepeda*, 738 F.3d at 207 (citation and internal quotation marks omitted).  Here, Carrillo presents

no arguments that the stipulation was involuntary, nor does a review of the record indicate any

support for such an argument, as it appears that Carrillo was present in court when trial counsel

entered into the stipulation.  Carrillo's confrontation claim therefore fails.

With respect to his ineffective assistance of trial counsel claim (Ground 8), Carrillo

relatedly faults counsel for stipulating to the admission of Ahida's statement.  But as the superior

court reasonably concluded when rejecting this claim on state habeas review:

> What was contained in the stipulation read to the jury was minimal, and
> petitioner's counsel likely chose not to risk having Ahida actually brought to California
> to testify and to give damaging testimony about petitioner, and petitioner does not show
> otherwise.  As petitioner does not show that Ahida could have been brought to California
> to testify or that Ahida's testimony that otherwise would have been given would not have
> been damaging to petitioner, he fails to show ineffectiveness or prejudice.

A tactical decision exercised by counsel deserves deference when counsel makes an

informed decision based on strategic trial considerations and the decision appears reasonable

under the circumstances.  *See Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Accordingly, counsel cannot be deemed defective for so stipulating, nor can appellate counsel be

faulted for not raising the issue on direct appeal.

E.    Improper Restitution Fine (Ground 6)

Carrillo next alleges that the trial court erred by imposing a restitution fine after it

erroneously determined that he has the ability to pay the fines from prison earnings.  A petition

for a writ of habeas corpus can be entertained only on the ground that the petitioner is "in

custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Ninth Circuit has held that "§ 2254(a) does not confer jurisdiction over a habeas corpus petition raising an in-custody challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976, 984 (9th Cir. 2010) (footnote omitted). "[T]he remedy that [Petitioner] seeks, the elimination or alteration of a money judgment, does not directly impact—and is not directed at the source of the restraint on—his liberty." *Id.* at 981. A federal court, then, lacks jurisdiction to hear claims that challenge the money portion of a state judgment, such as a restitution order, which does not affect the duration of custody. *Id.* Moreover, Carrillo's claim that the restitution order was unauthorized by California law is a state-law claim which is beyond the purview of this Court in a federal habeas proceeding. *Swarthout*, 131 S. Ct. at 863; *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). Accordingly, Carrillo is not entitled to relief on his restitution claim.

F.    Freestanding Ineffective Assistance of Counsel Claims (Grounds 8, 9)

Finally, Carrillo alleges that trial counsel and appellate counsel were ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas

petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice

standard is applied and federal courts do not engage in a separate analysis applying the *Brecht*

harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin*

*v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective

assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold." And, because the
> *Strickland* standard is a general standard, a state court has even more latitude to
> reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Carrillo must show that defense counsel's representation was not within the range

of competence demanded of attorneys in criminal cases, and there is a reasonable probability

that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,*

474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the

petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See*

*Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not

address both prongs if the defendant fails on one).

    1.    *Trial counsel*

Carrillo first contends that trial counsel was ineffective for failing to make any

investigation regarding the victim's prior violent conduct and propensity for violence. In

support of this claim, Carrillo states that he told his trial counsel before trial that the victim had

fought with Carrillo's brothers-in-law during a party at a house of the victim's family member,

and had fought with the victim's brother-in-law on another occasion.  But he fails to specifically identify what his counsel could have discovered had he conducted a more thorough investigation of the evidence at issue.  The Ninth Circuit has routinely rejected ineffective assistance of counsel claims based on a failure to investigate where the petitioner has not identified the specific exculpatory evidence that should have been presented.  *See, e.g.*, *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (petitioner failed "to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds"); *Hendricks v. Calderson*, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [petitioner] cannot meet the prejudice prong of the *Strickland* test.").  This Court thus cannot find the superior court's rejection of this claim unreasonable or contrary to federal law.

Carrillo also alleges that trial counsel was ineffective for failing to call Detective Kirtlan to the stand to testify regarding a statement that Lorena had given to him that would have impeach her trial testimony.  However, as the Superior Court found on state habeas review, the record reflects that defense counsel cross-examined Lorena about the statements at issue, and therefore any additional testimony on that point was cumulative and unnecessary.

Nor can Carrillo show that counsel was ineffective for failing to object when the prosecutor asked Carrillo if he could have retreated.  As the superior court reasonably concluded in rejecting this claim on state habeas review:

> The question appears to have been an isolated incident at trial.  After the testimony was taken, the jury was instructed with CALCRIM 505 and the parties had the opportunity to argue on self-defense, with the defense having opportunity to point out to the jury that retreat did not matter since self-defense may apply even if a defendant did not retreat.  As such, petitioner fails to show prejudice, and the claim is denied.

24

Carrillo additionally contends that defense counsel deprived Carrillo of a defense by arguing that his conduct was not "completely excusable."  The superior court considered and rejected this claim on state habeas review as follows:

> Petitioner also claims that trial counsel was ineffective in arguing to the jury that petitioner was guilty of something, which was contrary to his self-defense theory and left the jury with no choice but to convict petitioner of second degree murder. . . .  In support, he cites counsel's argument[:] "There was a very, very short period of time.  The warning shot in the ground, and all of the sudden that didn't work, and here he comes. That's—that makes sense.  Why else would he fire a warning shot if he wasn't trying to get this guy to back off?  Is the conduct completely excusable?  No.  Was it justified? Self-defense?  That's for you to decide.  What's reasonable going through his mind? What's a reasonable person, what's he thinking?  What's he doing under these circumstances compared to what a reasonable person in the same situation would do?"
>
> Petitioner fails to show ineffectiveness from this argument.  Clearly counsel was arguing the reasonable person standard to establish self-defense, and was attempting to persuade the jury that a reasonable person in petitioner's shoes would have been justified to act as petitioner had done.  Counsel did not tell the jury that petitioner was guilty of something, as petitioner argues, by stating "Is the conduct completely excusable?  No." Petitioner takes that out of the context, which when viewed in its entirety does not show ineffectiveness.  As such, the claim is denied.

The state court's conclusion is both reasonable and fully supported by the record.  The statement, in context, is part of defense counsel's argument for self-defense.  The state court's rejection of this claim is neither contrary to, nor an unreasonable application of, federal law.

Carrillo next argues that trial counsel should have moved to reduce the charge.  The Superior Court also considered and rejected this claim on state habeas review:

> Petitioner also claims that trial counsel was ineffective in failing to make a motion to the court based on the "doctrine of speciality," that petitioner could not be prosecuted for any offense other than that for which the surrendering state agreed to extradite, and in failing to argue at sentencing that under Mexican law and the law of extradition Mexico prohibited extradition for offenses that carry potential sentences of up to life imprisonment.  He claims that while in Mexico, he was told that he was going to be extradited to California to face murder charges and that no life sentence would be imposed upon him if he was convicted.  He claims that imposing a life sentence upon him violated the laws of extradition and contract. . . .

25

Petitioner fails to attach a copy of a portion of a treaty between Mexico and the United States that includes a "doctrine of speciality" provision, nor cite any authority regarding such a treaty. Nor does petitioner cite any Mexican law or court decision regarding extradition from Mexico to support his claim. Nor does petitioner cite any legal authority that would support his claim. And, more importantly, petitioner has failed to attach a copy of his purported Mexican extradition papers. The court's underlying file for Case No. 08F10624 contains no paperwork or mention of any extradition of petitioner from Mexico. Without establishing that the "doctrine of speciality" actually applies and that there Mexican extradition papers that specifically stated that petitioner was being extradited upon a promise that petitioner would be prosecuted only for a specified offense and that the punishment imposed for that offense not be life imprisonment, petitioner fails to set forth a prima facie case for relief.

Carrillo fares no better on federal habeas review. Again, Carrillo attaches only his own declaration in support of his claim. He does not attach any extradition agreement or treaty between Mexico and the United States which prohibits Carrillo's conviction and sentence. Because Carrillo has failed to meet his burden of proof on habeas, he is not entitled to relief. *See Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("self-serving statement" insufficient to raise claim for relief).

Carrillo further alleges that the cumulative effect of trial counsel's alleged errors prejudiced him and warrants reversal of his conviction. "While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness." *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers v. Mississippi*, 401 U.S. 284, 298, 302-03 (1973)). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (citation omitted). In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 401 U.S. at 294. As

26

discussed above, however, Carrillo does not allege any claims that amount to error, and thus he demonstrates no errors that can accumulate to a level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  Accordingly, Carrillo is not entitled to relief on any argument advanced in support of his ineffective assistance of trial counsel claim.

       2.    *Appellate counsel*

Carrillo additionally alleges that appellate counsel was ineffective for failing to raise Grounds 2 through 8 on direct appeal.  But this Court has thoroughly considered those claims and found them to be without merit.  Thus, appellate counsel cannot be faulted for not raising them on direct appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard.").  Carrillo is not entitled to relief on this claim.

V. CONCLUSION AND ORDER

Carrillo is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 2, 2017.

    /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge

28